CHICAGO—FIRST DISTRICT—JANUARY, 1916.    557

Lossechewich v. Chicago City Railway Co., 197 Ill. App. 557.

## Adam Lossechewich, Appellee, v. Chicago City Railway Company, Appellant.

### Gen. No. 20,883.    (Not to be reported in full.)

Appeal from the Superior Court of Cook county; the Hon. WILLIAM E. DEVER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1914. Affirmed. Opinion filed January 27, 1916.

### Statement of the Case.

Action by Adam Lossechewich, plaintiff, against the Chicago City Railway Company, defendant, in the Superior Court of Cook county, to recover for personal injuries. From a judgment for plaintiff for $2,500, defendant appeals.

It appeared that the plaintiff was employed by the defendant as a laborer in cleaning and sweeping cars at the defendant's barns between 69th and 70th streets in the City of Chicago for a long time prior to the time of his injury. He also swept around the barn and offices, and, when ordered, would take a car out on some part of the line where a car had been disabled, turning it over to the regular men. In this work he acted as motorman. The barn extended from 69th to 70th streets, and from Ashland boulevard, and was about one block in width. It was divided into seven bays by partitions extending north and south from 69th to 70th streets. In each bay there were three tracks extending its entire length, which were connected with the tracks in the streets. There were doors in the partitions connecting the different bays. About halfway between 69th and 70th streets there was a long pit about four feet in depth under each track. These pits were to enable the repair man to inspect and repair the cars. As the cars came in they were cleaned and inspected, put in condition and moved to the north end of the barn near 69th street, from which

558    APPELLATE COURTS OF ILLINOIS.

Lossechewich v. Chicago City Railway Co., 197 Ill. App. 557.

place they would be taken out when needed. The barn was in constant use. There were day and night shifts. Twenty-eight men were in the night shift, including the plaintiff. The evidence tended to show that about eight o'clock on the night of April 26, 1911, the car in question was inspected and put in repair by an employee named Little. After the car had been put in condition, Little ordered his helper, Gedraitis, to move the car to the north end of the barn at 69th street, which he did. The car was left just outside of the barn, where it remained for about two and one-half hours, when the night foreman told the plaintiff to take a car out "right away" to 59th street, where some trouble had occurred, and, as was the custom, told plaintiff to take a helper. These helpers were known as trolley boys, and part of their duty was to stand on the back platform during the trip. Plaintiff called a helper and both started towards the car, plaintiff reaching it first. The helper went to take a sign off the car, and plaintiff stepped in behind the car and adjusted the trolley. As soon as the trolley came in contact with the wire, the car backed up and plaintiff was caught between the car and another one standing on the same track. One of his legs was crushed above the knee. As he fell, he pulled the trolley pole from the wire and the car stopped. The mechanism of the car was in such position that the car would back up when the trolley was placed on the wire. There was no direct evidence as to how the mechanism came to be in this position. It was the custom, when cars were standing on the tracks, to leave the car "dead." There were two kinds of cars, known as small and big cars. The car in question was a small car, and the spring on the trolley pole was stiffer than on the larger cars, so that it was difficult to place the trolley pole against the wire without standing behind the car. The evidence also tended to show that it was the custom for either the helper or the motorman to

adjust the trolley pole when a car was to be taken out, and to stand behind the cars, especially the small ones, in so doing. There was no evidence that any one was near the car in question from the time it was placed at the entrance of the barn until the time of the accident, about eleven o'clock, except that given by the witness Daukintis who testified that fifteen minutes before the accident he saw the night foreman come out of the back end of the car in question. The foreman denied this, and testified that he had not been near the car for an hour or two.

The declaration was filed October 27, 1911, and consisted of but one count. It averred, in substance, that the defendant was operating street cars and a barn in connection therewith; that a foreman was in charge of the work in the barn and of the employees, including the plaintiff, which foreman was not plaintiff's fellow-servant, but was a direct representative of the defendant; that the defendant caused the trolley pole on one of its cars to be removed from the trolley wire, and permitted and allowed the mechanism of the car to be and remain in such condition and position that if the trolley were placed in contact with the wire the car would move backwards and against another car standing on the same track; that the defendant knew this, or by the exercise of ordinary care would have known it; that the plaintiff did not know it, and by the exercise of ordinary care would not have known it; that, although the defendant knew of these facts, the foreman "ordered, directed, commanded, allowed and permitted the plaintiff to go between" the cars to place the trolley pole in contact with the wire, and negligently and carelessly failed to warn or advise the plaintiff of the condition in which the car was standing and the plaintiff, while in the exercise of ordinary care for his own safety, in the performance of such order, direction or command, was injured etc. The defendant pleaded the general issue. During

560     APPELLATE COURTS OF ILLINOIS.

Lossechewich v. Chicago City Railway Co., 197 Ill. App. 557.

the trial plaintiff, by leave of court, filed an additional count. It averred, in substance, that the defendant operated certain street cars and barn in connection therewith; that it negligently and carelessly caused the trolley pole of one of its cars to be removed from the wire, and permitted and allowed the mechanism of the car to be and remain in such condition and position that in the event that the trolley pole should be placed in contact with the wire, the car would move backwards and against another car standing on the same track so that the first mentioned car was not reasonably safe, but dangerous and unsafe; that the defendant knew, or by the exercise of ordinary care would have known, of the condition in which the car was standing; that the plaintiff did not know and by the exercise of ordinary care would not have known of such condition; that the plaintiff in the discharge of his duties went between the cars to place the trolley pole in contact with the wire, and, as he did this, the car, by reason of the carelessness and negligence of the defendant, moved backwards and injured the plaintiff. To this count the defendant filed pleas of the general issue and statute of limitations. A demurrer was sustained to the latter plea. Defendant elected to stand by said plea.

The action was twice tried, the jury disagreeing at the first trial. At a second trial the jury found for plaintiff.

The court gave the following instruction for plaintiff, over objection of defendant:

"The court instructs the jury that where a master confers authority upon one of its employees to take charge and control of a certain class of workmen in carrying on some particular branch of its business, such employee in governing and directing the movements of the men under his charge with respect to that branch of the business, is the direct representative of the master and is not a mere fellow-servant and if he is guilty of a negligent and unskilled exercise

of his power and authority in directing and controlling the work under his charge, it is in law the same as though the master itself was guilty of such conduct.''

FRANKLIN B. HUSSEY and CHARLES LEROY BROWN, for appellant; JOHN R. GUILLIAMS, of counsel.

ELMER, COHEN & BELASCO, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

## Abstract of the Decision.

1. LIMITATION OF ACTIONS, § 76*—*when statute may be pleaded to amended declaration.* Where an amendment to a declaration, filed after the period of limitation has run, sets up a new cause of action, differing from that stated in the original declaration, the statute of limitations may be pleaded in bar.

2. LIMITATION OF ACTIONS, § 61*—*what constitutes commencement of new action.* An amendment to a declaration stating a new and different cause of action is to be treated as the commencement of a new action.

3. LIMITATION OF ACTIONS, § 58*—*when amendment to declaration relates back to commencement of action.* Where an amendment to a declaration states no new matter or claim but merely restates in a different form the cause of action set up in the original declaration, such amendment relates back to the commencement of the action.

4. LIMITATION OF ACTIONS, § 49*—*when statute arrested by bringing action.* The running of the statute of limitations to a cause of action is arrested by bringing an action on such cause.

5. PLEADING, § 50*—*how question whether cause of action in declaration and that in amendment are the same determined.* The question whether the cause of action stated in the original declaration and that stated in an amendment or additional count are the same or different causes of action is to be determined as matter of law from an inspection of the pleadings alone.

6. NEGLIGENCE, § 132*—*when no recovery for negligent acts not pleaded.* In an action involving negligence, plaintiff must recover on the case made by his declaration and cannot allege a specific act of negligence and recover on proof of negligence of another character.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

7. PLEADING, § 56*—*how determined whether different counts constitute same or different cause of action.* One of the tests by which it is to be determined whether different counts constitute the same or different causes of action is whether the same evidence will support both counts.

8. PLEADING, § 45*—*when declaration containing one supported count sufficient.* Where a declaration states in different counts two or more causes of action, it is sufficient if one cause is established by evidence.

9. PLEADING, § 50*—*when additional count does not set up new cause of action.* A demurrer to a plea of the statute of limitations interposed to an additional count, on the ground that it stated a different cause of action than the original declaration, is rightly sustained where the gist of the additional count is the failure of defendant to furnish plaintiff with a car in a reasonably safe condition with which to work, and where the original declaration also covers such cause of action, although alleging in connection therewith specific acts of negligence on the part of defendant's foreman.

10. MASTER AND SERVANT, § 154*—*what is duty of street railroad to provide safe cars.* Street railroads are charged by the law with the positive obligation of furnishing to its employees cars in a reasonably safe condition with which to work.

11. MASTER AND SERVANT, § 689*—*when evidence sufficient to sustain verdict for personal injuries due to unsafe condition of street car.* In an action to recover for personal injuries sustained by a motorman as a result of the alleged unsafe condition of the car defendant's foreman ordered him to operate, where the jury were correctly instructed, a verdict for plaintiff *held* not clearly and manifestly against the weight of the evidence.

12. MASTER AND SERVANT, § 779*—*when instruction on liability of master for negligence of foreman not inapplicable to facts.* In an action to recover for personal injuries sustained by a motorman as a result of the alleged defective condition of a car which defendant's foreman ordered him to operate, an instruction requested by plaintiff that where a master confers authority upon one of its employees to take charge of a certain class of work, such employee in governing and directing the men under his charge is the direct representative of the master and not a mere fellow-servant, and that if he negligently exercises his authority in directing the work the master is liable, *held* not erroneous as being inapplicable to the facts.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.